Bergan, J. (dissenting).
The defendant’s conviction for criminal trespass (Penal Law, § 140.10) and for resisting arrest (Penal Law, § 205.30) must be reversed on the ground his guilt was not established beyond a reasonable doubt.
The highest legal authority over school property in the school district of the City of New York is vested in the board of education (Education Law, art. 52, §§ 2550, 2554[4]). The custody and control of 44 all ” school property is there. (See, also, generally on school property, Education Law, § 414.)
John Doar, who on October 16, 1968 and immediately thereafter was the president of the board of education, testified that the board had voted to keep the schools open during the then current teachers’ strike and the board also had agreed on the text of a 44 directive ” which he was authorized by the board to publish.
This directive, he testified, was addressed to the superintendent of schools, 44 to the employees of the school ”, to the *459 students, to their parents and to the citizens of the city. The Assistant District Attorney on the trial expressly conceded, in answer to the court’s question, that the directive “ was formulated by a majority of the Board at a duly constituted meeting ”.
Mr. Doar also testified unequivocally that the schools were never closed by the board during the strike, either informally or formally, and that “ some of the employees of the Board were illegally, without authority closing the schools and locking them ”.
The directive as published was ‘ ‘ to tell publicly employees of the Board and custodians and [that] we want to make it clear even if one teacher would want to go to school to teach that the school would be open ”.
The People argue that Gerard Oak, principal of Washington Irving High School, had general authority over that school under the by-laws of the board of education, and had ordered it closed on October 17 when defendant entered the school. They also note that Nathan Brown, executive deputy superintendent of schools, had issued under the authority of the board a procedure for opening a school when ‘ ‘ the custodian refuses to open the school
But it is clear from Mr. Dear’s testimony that the board of education’s directive the schools be open “ if there is only one teacher going to the school ’ ’ was not affected by either of those circumstances as of the time material to this prosecution. The normal and routine authority of the local principal to close the Washington Irving High School under the by-laws was superseded by the board’s contrary directive. Mr. Doar made it explicit that the procedure governing 6 ‘ authority of persons to open the schools ” came “ Not until after ” the directive to all teachers and employees to come to the schools had been issued.
If there is confusion in the sequential exercise of authority under the board’s action here, it is a confusion which does not help the prosecution to establish beyond a reasonable doubt that this defendant teacher 1 ‘ knowingly ’ ’ entered or remained “ unlawfully in a building ” (Penal Law, § 140.10).
Mr. Horelick was assigned to this school and his right'— indeed his duty under the board’s directive—was to be there in spite of an illegal strike. As already noted the highest author *460 ity in the school system had published a directive advising that the schools would remain open and inviting teachers to come to work.
Actually, the board regarded the closing of schools by custodians as “unlawful”. That defendant came in through a window is not remarkable in the light of the hostility of custodians who were wrongfully closing the school. The prosecutor, therefore, has not established beyond a reasonable doubt that defendant was “wrongfully”- in the school in which he was assigned to teach and both prosecutions on this charge are. essentially similar.
Even if the legal right of defendant to be in the school were far more debatable than it is, a case would not be made out. The Appellate Division in People v. Barton (18 A D 2d 612) noted that a “ colourable claim of right—even if it were mistaken— negatives the criminal intent necessary for a conviction under section 2036 of the Penal Law [predecessor to § 140.10] ”. (See, also, Judge Andrews’ dictum on a legally mistaken entry on land in good faith in People v. Stevens, 109 N. Y. 159, 163.)
The decision in People v. Williams (25 N Y 2d 86), relied on by the People, is quite different, based as it was on proof of obstruction of public officers in discharge • of duty under an entirely different kind of statute (former Penal Law, § 1851). The prosecution here for criminal trespass is sharply distinguishable, and it is enough to say that it is not established beyond a reasonable doubt.
Nor is the prosecution for resisting arrest (Penal Law, § 205.30) established beyond a reasonable doubt. When the testimony of the arresting officer, Patrolman John Van Houten, is analyzed, it is manifest that defendant put his hand up as though protesting the arrest without touching the officer. Although the officer initially testified that defendant “ kicked at me ”, he altered this on cross-examination to say “ Attempted to kick me ”. When his actual observation was sought he said merely that defendant “ moved his leg ” toward him.
The remaining proof bearing on an attempt to prevent arrest consisted of the officer’s testimony that defendant was “ Sort of twisting his body around, waiving his other arm [the one not handcuffed] ” and “ More or less sort of wiggling his arms ” *461 and “ kept putting Ms feet out in front of Mm ” and “ on the side of the radio car ”.
This does not actually establish the defendant’s guilt for attempting to “ prevent ” the officer from “ effecting ” an authorized arrest under section 205.30 of the Penal Law (see People v. Adickes, 30 N Y 2d 461, decided today). Nor is this Mnd of minor objection to arrest a fair basis for a separate prosecution on a distinct crime.
The order should be reversed and the charges dismissed.
Judges Burke, Scileppi and Jasen concur with Judge Breitel ; Judge Bergan dissents and votes to reverse and dismiss the information in a separate opinion in which Chief Judge Fuld and Judge Gibson concur.
Order affirmed.